UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CR-0268-B |
| | § | |
| DARREN REMERO PRICE (09), | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER
## SANCTIONING ATTORNEY CURTIS LILLY

The conduct of Defendant Darren Price's (hereinafter, "Price") former attorney, Curtis Lilly (hereinafter, "Lilly"), is the subject of this Order. Specifically, the query before the Court is whether Lilly violated his duty of good faith and candor to the tribunal by making misrepresentations to the Court regarding his representation of Price. Having considered the evidence, including testimony from Price, visitation logs from the Federal Correctional Institute, and prior filings with this Court, the Court finds that Lilly made misrepresentations to the Court in bad faith, violating his professional obligations to Price and this Court. So finding, the Court sanctions Lilly as set forth below.

### I. BACKGROUND

Price was indicted on September 3, 2008 on one count of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. (Indictment.) Based upon his financial affidavit, the Court determined that Price could not afford counsel and appointed assistant federal public defender Kevin Ross to represent him. Price, however, decided that he would fare better with retained counsel and hired Lilly with $1700.00 in funds he accumulated by pawning

numerous family possessions. Price engaged Lilly's services on September 25, 2008, as evidenced by his signature on his Unopposed Motion to Substitute Counsel (doc. 98).

The Court's concerns about Lilly's proficiency as an advocate for Price were triggered by Price's handwritten Motion to Withdraw Counsel (hereinafter, the "Motion") filed on November 4, 2008. Price claimed that he had not seen nor heard from Lilly since he paid him the $1,700.00. Price further alleged that Lilly was routinely refusing to accept his calls from the Federal Correctional Institution. Price asked the Court to order Lilly to reimburse Price the $1,700.00 fee. Concerned with these allegations, the Court contacted Lilly telephonically and advised him that a hearing would be set on the Motion for November 12, 2008.[1] The Court followed up with a written order which was e-mailed to Lilly's e-mail account of record. There was no indication in the Court's e-mail system that Lilly did not receive the e-mail notice.

Lilly failed to appear for the proceeding. Price, visibly frustrated at the hearing, reiterated the allegations made in his Motion. It was only after the Court concluded the proceedings that Lilly called the Court. Lilly insisted he had mistakenly scheduled the hearing for the wrong date. Court staff again informed Lilly that he would be required to appear in Court on a date to be specified in a forthcoming order. The Court, that day, issued an Order to Show Cause (doc. 122), directing Lilly to appear on November 18, 2008 and explain his failure to appear.

The day the show cause hearing was to occur, court staff telephoned Lilly to inform him that the hearing would be held before the Honorable Paul D. Stickney. Judge Stickney convened the

---

[1] Prior to setting a hearing on the Motion, Lilly was instructed to file a response for the Court's consideration. Lilly objected to filing a response, claiming that doing so would give Price's co-defendants access to confidential information. Court personnel then verbally informed Lilly that a hearing would be set for the Motion via a forthcoming order.

show cause hearing at 2:00 p.m. that afternoon. Lilly, though tardy, appeared as the Court directed. Lilly opened by maintaining, on the record, that he had not received electronic notice of either the November 12 or November 18 hearings.[2] According to Lilly, he was only made aware of the hearings when court personnel phoned his office. This was the only excuse provided for his failure to appear on November 12 as well as his tardiness to the hearing in progress.

Although Lilly did not object to being removed from Price's case, he denied Price's allegations in his Motion to Withdraw Counsel. When asked to elaborate, Lilly stated numerous times to Judge Stickney that he had visited Price in prison on four or five occasions *since* Price retained his services. Attempting to clarify this contradiction for the record, Judge Stickney had the following exchange with Lilly:

> THE COURT: Now, you didn't get on this case until September 30th.
>
> MR. LILLY: Yes, that is correct.
>
> THE COURT: So in the last 45 days, you are telling me that you have seen Mr. Price at least four times?
>
> MR. LILLY: That is correct.

(Show Cause Hr'g Tr. 12, Nov. 18, 2008.)

Upon hearing this testimony, Judge Stickney ordered Lilly to provide the Court with proof of, *inter alia*, his in-prison visits with Price within twenty-four hours. The following day, November 19, 2008, this Court held a hearing to take the requested evidence from Lilly. Sign-in logs from the facility where Price is incarcerated reflected that Lilly visited the prison on only two occasions -

---

[2] The Electronic Case Filing system, adopted nation-wide by the United States District Courts, notifies attorneys of filings in an action by sending an e-mail correspondence with the filing attached. It is these e-mails which Lilly insisted he had not received.

September 19 and 25 - and not four or five dates as he claimed. Moreover, Price testified, and his Motion to Substitute Counsel (doc. 98) established, that the two entered into the attorney-client relationship on Lilly's *last* visit to the prison, September 25, 2008. This substantiated Price's assertions that Lilly had not returned to see him since being retained. The Court pressed Lilly about this discrepancy, as the previous day Lilly had testified in front of Judge Stickney that he saw Price in person on no less than four occasions since he was added to the case. Lilly was unable to provide reasons for this contradiction and appeared to be grasping for answers such as that on one occasion he drove to the facility but was unable to see Price because visiting hours had ended. The Court then turned to Lilly's attendance issues at the prior hearings. Lilly vacillated as to when and how he was receiving notice of the scheduled hearings. Reasserting that he never received his electronic notifications of the hearings, Lilly was unable to explain how this representation reconciled with his previous statement to the Court, when contacted telephonically, that he missed the hearing because he scheduled it for the wrong day.[3] Lilly was not credible in demeanor or in substance. In contrast, Price staunchly reaffirmed the statements made in his handwritten Motion.

In concluding the proceedings, the Court, relying on its inherent powers, sanctioned Lilly by ordering him to refund $1,500.00 of the $1700.00 fee to Price by November 26, 2008. In doing so, the Court, on the record, found Price's - as opposed to Lilly's - testimony to be credible. As a basis for the sanction, the Court additionally determined and now explicitly finds that Lilly, in bad faith,

---

[3]Indeed, because all hearing dates were set by order, Lilly would necessarily had to have received electronic notification to know to calendar a date, even if he ultimately calendared the incorrect date. Moreover, despite Lilly's repeated claim that he was not receiving electronic notifications, he stated, on the record, that he *did* receive the e-mail notice informing discovery was available in Price's case. This discrepancy, coupled with the fact that the clerk's office never received notices of un-deliverability raises additional questions as to the veracity of Lilly's representations.

lied to the Court about his conduct. The Court's inherent authority to sanction bad faith conduct provides a sound basis for the ordered reimbursement as fully explained below.

## II. ANALYSIS

Federal courts have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-5 (1991). Toward that end, federal courts are empowered to sanction bad faith conduct occurring throughout the prosecution of an action. *Id.* at 45. It goes without saying that lying to the Court constitutes bad faith. *See generally id.* at 42, 46, 50-1 (upholding the district court's use of its inherent authority to sanction bad faith conduct which included "misleading and lying to the court").

Coextensive with the inherent authority to mete out sanctions is the requirement that these implied powers be exercised with restraint and discretion. *Id.* at 44 (citing *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980)). Inherent powers "may be exercised only if essential to preserve the authority of the court and the sanction must employ" the least possible power adequate to the purpose to be achieved. *Natural Gas Pipeline of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). In other words, the sanction must "be tailored to fit the particular wrong." *Topalian v. Ehrman*, 3 F.3d 931, 936 n.5 (5th Cir. 1993) (extending the analytical principles for determining sanctions under FED. R. CIV. P. 11 "across-the-board" to all of the district court's sanctioning powers). Appropriate factors to consider in determining the amount of a sanction award include: 1.) the precise conduct being punished; 2.) the precise expenses caused by the violation; 3.) the reasonableness of the fees imposed; and 4.) the least severe sanction adequate to achieve the purpose of the rule relied upon to impose the sanction. *Id.* at 936.

The Court finds that a refund of $1,500.00 of the initial $1700.00 fee to be the least severe

sanction appropriate under the circumstances for the reasons that follow. Lilly took all of the proceeds Price earned from pawning his possessions and left Price in jail awaiting word on his case. Had Price not written his note to the Court, he might still be wondering what became of Lilly and what was going on with his case. When called on his behavior, Lilly lied to the Court. Dishonesty towards the tribunal is among the most egregious of sanctionable conduct. conduct committed by lawyers. The serious nature of such conduct is exemplified in the American Bar Association's Model Rules of Professional Conduct which command that "a lawyer shall not knowingly ... make a false statement of law or fact to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer ...." MODEL RULES OF PROF'L CONDUCT R. 3.3(a)(1); *see also* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 3.03(a)(1) ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal").

As set forth *supra*, Lilly made numerous misrepresentations to the Court, and failed to correct them even when questioned by a United States Magistrate Judge and a United States District Judge at two separate hearings. Lilly specifically denied Price's allegation that Lilly had not visited Price in prison since being retained. Indeed, when pressed by Judge Stickney, Lilly insisted, time and again, that he had physically visited with Price in prison on no less than four occasions *since* being retained as counsel. Price strongly and credibly denied Lilly's version of events, maintaining that the last time he had seen Lilly was the date he signed the papers to employ him. Price's version of events is corroborated by the sign in logs at the federal correctional facility, as the final date Lilly is documented to have visited the prison is September 25, 2008. Further, Price's Motion to Substitute Counsel bears Price's signature, dated September 25, 2008, again coinciding with Price's account of events. The records and filings with this Court, therefore, substantiate the fact that Lilly's version

of events are not truthful.

Also of concern are the resources the federal judiciary expended on what should normally be a relatively simple matter. Because of Lilly's failure to appear at the first hearing, the Court was compelled to hold two additional hearings to adequately assess the veracity of Lilly's representations. In addition to utilizing the time of the judges and their staffs, each time a hearing was held the United States Marshall's had to transport Price from the facility where he was incarcerated to the courthouse in Dallas. Moreover, composing a sanctions order of this nature is another drain on the Court's resources - a time-consuming effort that does nothing to advance the case on its merits.

Finally, Lilly violated his professional duty to his client. Lilly maintained to the Court that he satisfied his obligations as an attorney by indirectly communicating with Price through Price's wife. Lilly insisted that he was giving constant updates to Price's wife, asking her to deliver the information to Price. The Court is highly skeptical as to whether this claim is genuine, given that Price credibly testified that he failed to receive information from any source, not just Lilly. However, even assuming Lilly did deliver information to Price's wife, such conversations are insufficient to satisfy Lilly's obligations as Price's attorney. MODEL RULES OF PROF'L CONDUCT R. 1.4(a) provides:

> (a) A lawyer shall:
>
>   ....
>
>   (2) reasonably consult with *the client* about the means by which the client's objectives are to be accomplished;
>
>   (3) keep *the client* reasonably informed about the status of the matter;
>
>   (4) promptly comply with reasonable requests for information ....

(emphasis added); *see also* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 1.03(a) ("A lawyer

shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."). By the plain terms of the rule, Lilly should have been communicating directly with Price as opposed to relying on third parties to deliver the information. Moreover, by refusing to accept calls from Price, Lilly is clearly in violation of section (a)(4), which requires a prompt response to any request for information. Perhaps most troubling is that all of this resulted from Lilly taking what - from Price's viewpoint - was a fortune, only to stop communicating with him and refusing to take his calls.

For the foregoing reasons and the reasons stated on the record at the November 19, 2008 hearing, the Court is of the opinion that a sanction of $1,500.00 - which represents the original $1700.00 fee minus $200.00 for the meeting when Price retained Lilly - is the least severe possible to maintain the Court's "power to impose silence, respect, and decorum, in [its] presence, and submission to [its] lawful mandates." *Chambers*, 501 U.S. at 43. An un-sanctioned bad faith misrepresentation carries with it the ability to destroy the Court's status as a hall of justice. Furthermore, the present misrepresentations deal with an attorney's failure in his duty toward his client. In retaining Lilly's services, Price put his fate in Lilly's hands. Once this exchange took place, Lilly failed Price. Such action cannot be tolerated.

### III. CONCLUSION

For the reasons stated herein, as well as on the record at the November 19, 2008 hearing, the Court **ORDERS** Lilly to reimburse Price in the amount of $1,500.00. Payment should be made by check payable to the Kevin Ross on behalf of Darren Remero Price and delivered to the District Clerk's Office, 1100 Commerce Street, 14th floor, Dallas, Texas and is due no later than **12:00 noon on November 26, 2008.** Should Lilly fail to comply with the foregoing directive, he will be subject

to sanctions up to and including contempt of court.

SO ORDERED.

SIGNED November 25, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE